IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kenneth E Williams, PhD, | Case No: 1:20-cv-2165 |
| Plaintiff | (Judge Kane) |
| *versus* | Jury Trial |
| Shippensburg University of Pennsylvania, | |
| Defendant | |

**PLAINTIFF'S PRETRIAL MEMORANDUM**

In accordance with the Court's Trial Scheduling Order (Doc 70), counsel for the parties held their Local Rule 16.3 conference on January 24, 2025. Plaintiff Kenneth E Williams, PhD ("Plaintiff" or "Williams") now submits this pretrial memorandum.

**A.     A brief statement as to federal court jurisdiction.**

The Court has original jurisdiction under 28 U.S.C. § 1331 because plaintiff asserts claims under the Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA).

**B.    A summary statement of facts and contentions as to liability.**

In August 2018, Williams was hired into a full-time adjunct faculty position by Shippensburg University ("Defendant" or "University").

Williams is a person with disabilities. He suffers from chronic pain resulting from a neck and shoulder injury. This condition substantially limits a number of Williams's major life activities, such as writing, typing, lifting, walking, and standing. He also has hand tremors, which substantially limit his hand dexterity and fine motor skills. Additionally, when he was a teenager, Williams's right leg was broken and healed incorrectly. As a result, Williams walks with a permanent limp and has difficulty climbing stairs. Williams's chronic neck, shoulder, and leg injuries are longstanding and permanent in nature.

Shortly after he was hired for the adjunct faculty position, Williams applied for other supplemental positions within the University, including one to be the Director of Pride Center. Williams had difficulty completing the application for the Pride Center Director position due, in part, to his disabilities/hand tremors and requested accommodations as a result. The University denied this request for accommodation and instructed Williams to "fumble through it" with the portal.

Additionally, Williams's transcript totaled seven pages, but the Pride Center application process imposed a five-page limitation on transcripts. Williams was

concerned with the limitation on the length of transcripts in the application process because these types of limitations can have a negative disparate impact on older, more experienced workers like him that have longer transcripts.

During this time (late August to early September), Williams had a telephone call with a University human resources representative, believed to be Robyn Lovett, who informed him that the University was looking for someone "vibrant" and someone younger would be favored for the Pride Center position.

On September 7, 2018, Williams sent an email to Dr. Kurt Dunkel, who Williams understood to be a member of the search committee for the Pride Center position. In that email, Williams disclosed to Dr. Dunkel that he is disabled and raised concerns about the application process that stemmed from the denial of his reasonable accommodation request to submit the application via email rather than through the portal.

Williams did not receive an interview for the Pride Center position and was provided with varying reasons for this, which Williams reasonably believed to be false and discriminatory based on his age and disabilities.

On September 11, 2018, Williams lodged a formal complaint via email to Carlisha Halkias, who at that time was the University's Title XI Coordinator/Chief Equity, Inclusion and Compliance Officer. In his September 11, 2018 email to Ms.

Halkias and during a follow-up telephone conversation with her on or about September 18, 2018, Williams expressed his belief that his non-selection for an interview for the Pride Center position was the result of disability and/or age discrimination.

As a result of his disabilities, Williams has trouble ascending and descending stairs. In his September 11, 2018 email to Ms. Halkias, Williams also made a complaint about the way the University handles requests for disability accommodation in the use of elevators on campus.

In his September 11, 2018 email to Ms. Halkias and during his follow-up telephone conversation with her, Williams also complained that he believed the application process for the Pride Center position was discriminatory on the basis of age because the page limitation for transcripts can have a disparate impact on older applicants.

Additionally, Williams was provided with copies of the CVs for the three applicants selected for interviews for the Pride Center position. Based on the information, it was apparent that the selected candidates were significantly younger and less qualified than Williams. The selected candidates were former athletes or had ties to athletics and, were presumably, not disabled. Based on this information, Williams further believed he was not selected for an interview

because of his age and/or disabilities and reported these beliefs during his complaints to the University.

Williams later learned that, shortly after he raised complaints about his discriminatory non-selection for an interview, the University decided to not move forward with the Pride Center Director position.

Throughout the fall semester and spring semester, Williams continued to raise concerns about age and disability discrimination and with the process by which the University was investigating his complaints. During that time, the University conducted an investigation of Williams's complaints and eventually a hearing in front of a Board was held on Williams's age and disability discrimination complaints.

At all relevant times, Kara Laskowski ("Laskowski") was the Chair of the Communications Department and was Williams's direct supervisor. Laskowski became aware of Williams's complaint to the Office of Equity, Inclusion and Compliance and began questioning Williams about his complaint on multiple occasions.

After Laskowski learned of Williams's complaint, she began treating him with animosity in the workplace, unfairly critiquing his work performance, and

scolded Williams about his discrimination complaint, telling him that it reflects poorly on her and the department.

On or about May 31, 2019, Williams was provided with notice that he would not be reappointed for the following semester – i.e. his employment was being terminated – "based on current student enrollment." Discovery has revealed this reason to be false.

In response to Williams's EEOC charge and throughout the course of this litigation, the University has provided various, shifting reasons for Williams's termination, falsely claiming, among other things, that his non-renewal was based on his performance reviews.

As it turns out, Laskowski made the decision to not renew Williams around the same time she confronted Williams and told him to drop his discrimination complaints because they were making her and the department look bad. Discovery revealed that Laskowski's decision was made prior to the availability of information that would have supported any of the University's stated reasons for terminating Williams's employment.

**C.    A comprehensive statement of undisputed facts as agreed to by counsel at the conference of attorneys required by Local Rule 16.3.**

1. Williams is an adult individual who was born in 1962.

2.  Williams suffers from chronic pain resulting from a neck and shoulder injury. This condition substantially limits a number of his major life activities, such as writing, typing, lifting, walking, and standing. Williams also has hand tremors, which substantially limit his hand dexterity and fine motor skills. Additionally, when he was a teenager, his right leg was broken and healed incorrectly, which has caused him to walk with a permanent limp and difficulty climbing stairs. Williams's chronic neck, shoulder, and leg injuries are longstanding and permanent in nature.

3.  At all relevant times, Shippensburg was Williams's employer under the ADEA and ADA.

4.  In or around August 2018, Williams was hired by Shippensburg University as an Assistant Adjunct Professor.

5.  Williams's pay for the 2018-19 school year was $59,701.

6.  Williams reported directly to Shippensburg's Human Communication Studies Department Chair, Kara Laskowski ("Laskowski").

7.  On September 11, 2018, Williams lodged a complaint to the University's Title XI/Equity, Inclusion and Compliance Office.

8. On or about May 31, 2019, Williams was provided with notice that he would not be reappointed for the following semester "based on current student enrollment."

D. **A brief description of damages:**

- Back pay for the 2019-20 school year through present;

- Liquidated (double) damages under the ADEA;

- Front pay;

- Interest; and

- Attorneys' fees and costs.

E. **Names and addresses of witnesses, along with the specialties and qualifications of experts to be called.**

- Plaintiff

- Dr. Kara Laskowski (as on cross)

- Dr. James Mike (video deposition, as on cross)

F. **Summary of testimony of each expert witness.**

N/A.

G. **Special comment about pleadings and discovery, including depositions and the exchange of medical reports.**

None.

H.   A summary of legal issues involved and legal authorities relied upon.

To establish a prima facie case of retaliation under the ADA or ADEA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Fasold v. Justice*, 409 F.3d 178, 188-89 (3d Cir. 2005). The anti-retaliation provisions under the various discrimination statutes are nearly identical and are generally construed the same. *See Fogleman v. Mercy Hosp.*, 283 F.3d 561, 567 (3d Cir. 2002) ("Because the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII, we have held that precedent interpreting any one of these statutes is equally relevant to interpretation of the others.") (citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)).

In addressing the protected activity element, our courts have held that an employee engages in protected activity when he makes a complaint against an employer "under a good faith, reasonable belief that a violation existed." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996). A plaintiff is not required to "prove the merits of the underlying discrimination complaint, but only

that 'he was acting under a good faith, reasonable belief that a violation existed.'" *Id*. (citing *Griffiths v. Cigna Corp.*, 988 F.2d 457, 468 (3d Cir. 1993); *Sumner v. United States Postal Service*, 899 F.2d 203, 209 (2d Cir. 1990)). "The employer is prohibited from retaliating even if the employee's beliefs were mistaken, so long as the allegations of discrimination have an objectively reasonable basis in fact." *Evans v. FRB*, No. 03-4975, 2005 U.S. Dist. LEXIS 5714, at *6 (E.D. Pa. Apr. 4, 2005).

A retaliation plaintiff does not need to establish an underlying violation of the law. Rather, the guiding principle is that a retaliation plaintiff need only show that a reasonable person, standing in his shoes, would believe a violation occurred. *See Kengerski v. Harper*, 6 F.4th 531, 537 (3d Cir. 2021).

**I.      Stipulations desired.**

   1.   Williams is an adult individual who was born in 1962.

   2.   Williams suffers from chronic pain resulting from a neck and shoulder injury. This condition substantially limits a number of his major life activities, such as writing, typing, lifting, walking, and standing. Williams also has hand tremors, which substantially limit his hand dexterity and fine motor skills. Additionally, when he was a teenager, his right leg was broken and healed incorrectly, which has caused him to walk with a permanent limp and difficulty climbing stairs. Williams's

       chronic neck, shoulder, and leg injuries are longstanding and permanent in nature.

3. At all relevant times, Shippensburg was Williams's employer under the ADEA and ADA.

4. In or around August 2018, Williams was hired by Shippensburg University as an Assistant Adjunct Professor for the Fall 2018 semester.

5. In or around December 2018, Williams was reappointed as an Assistant Adjunct Professor for the Spring 2019 semester.

6. Williams's pay for the 2018-19 school year was $59,701.

7. Williams reported directly to Shippensburg's Human Communication Studies Department Chair, Kara Laskowski ("Laskowski").

8. On September 11, 2018, Williams lodged a complaint to the University's Title XI/Equity, Inclusion and Compliance Office.

9. On or about May 31, 2019, Williams was provided with notice that he would not be reappointed for the Fall 2019 semester "based on current student enrollment."

**J.**    **Estimated number of trial days.**

Four days.

**K.**    **Any other matter pertinent to the case to be tried.**

N/A.

**L.   Schedule of exhibits.**

The exhibit list and pre-marked copies of exhibits will be provided in accordance with the Court's December 19, 2024 Trial Scheduling Order.

**M.   Append any special verdict questions which counsel desires to submit.**

None.

**N.   Defense counsel must file a statement that the person or committee with settlement authority has been notified of the requirements of and possible sanctions under Local Rule 16.2.**

N/A.

**O.   Certificate must be filed as required under Local Rule 30.10 that counsel have met and reviewed depositions and videotapes in an effort to eliminate irrelevancies, side comments, resolved objections, and other matters not necessary for consideration by the trier of fact.**

Plaintiff intends to introduce the video deposition of Dr. James Mike, who was the Interim Provost at the time of the adverse employment action. Dr. Mike issued the letter providing the false reason for Williams's non-renewal. Plaintiff intends to eliminate the preliminary instructions from the depositions. Defendant has indicated an intention to generally object to this testimony.

**P.**    **In all trials without a jury, requests for findings of both fact and law shall be submitted with this Memorandum as required under Local Rule 48.2.**

N/A.

        Respectfully submitted,

        */s/ Anthony T Bowser*
        Anthony T Bowser (ID # 204561)
        KREVSKY BOWSER
        20 Erford Road | Suite 300a
        Lemoyne, Pa 17043
        717-731-8600
        abowser@krevskybowser.com
        *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on February 14, 2025, a copy of the foregoing document was filed using the Middle District of Pennsylvania's ECF system causing a notice of electronic filing to be served upon the following counsel of record:

Francis H Pryzbylkowski, Esquire
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
fpryzbylkowski@attorneygeneral.gov
*Counsel for Defendant*

                                        KREVSKY BOWSER LLC

                                        */s/ Anthony T Bowser*